CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

March 20, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ Tallulah Costa
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

KATELYN HOLLAND,

    **Plaintiff,**

v.

CARILION CLINIC,

    **Defendant.**

**Case No.** 7:26-CV-00240

## COMPLAINT

COMES NOW the Plaintiff, Katelyn Holland, by counsel, and moves for judgment against Defendant Carilion Clinic, stating the following:

### I.    JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter as it arises from the federal questions presented by Title VII of the Civil Rights Act of 1964, as codified under 42 U.S.C. §§ 2000e, *et seq.*, 42 U.S.C. § 2000e-5(f) ("Title VII"). *See generally* 28 U.S.C. §§ 1331, 1343(a)(4).

2. Venue is proper in this Court, as the acts and/or omissions substantially occurred within the Court's geographic area. See 28 U.S.C. § 1391(b)(2).

3. Venue is appropriate as the acts and/or omissions of Defendants from which these causes of action arise, occurred within the Western District of Virginia. See 28 U.S.C. § 1391(b)(2).

4. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a Dismissal and Notice of Rights from the EEOC dated

December 23, 2025, attached hereto as **EXHIBIT A**.  Plaintiff files suit within ninety (90) days of receipt of that Dismissal and Notice of Rights.

**II. THE PARTIES**

5.   Plaintiff is an adult, residing in Franklin County, Virginia, and at all relevant times was employed by Carilion Clinic.

6.   Defendant Carilion Clinic is a corporation and is authorized to transact business in Virginia.

7.   The Plaintiff worked for Carilion Clinic as a registered nurse in the Radiology Department of Roanoke Memorial Hospital.

8.   Carilion Clinic employs thousands of employees throughout Virginia and is considered an "Employer" pursuant to Title VII.

**STATEMENT OF FACTS**

9.   Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

10. Plaintiff was hired by Carilion Clinic as a Registered Nurse working in the Radiology Department of Roanoke Memorial Hospital ("RMH") and began employment on or around February 28, 2023. Plaintiff was eventually promoted from staff nurse to Preceptor, meaning she would train new nurses in the policies and procedures of the Radiology Department.

11. Prior to February of 2024, Plaintiff received positive performance reviews and comments regarding her work performance and received frequent praise from supervisors.

12. In February of 2024, the Plaintiff began having domestic problems with her husband.

13. As a result of the Plaintiff's domestic situation, Plaintiff received extra attention from Nathan Campbell, her direct supervisor. Nathan Campbell had direct supervisory power and control over the Plaintiff.

14. In July of 2024 Mr. Campbell invited Plaintiff into his office and began a sexually explicit

conversation, asking Plaintiff about her sexual preferences. Mr. Campbell advanced toward Plaintiff in what looked like an attempt to kiss her. Plaintiff stood up, put up her hands and said "No, no, no." Plaintiff left his office.

15. In August of 2024, Plaintiff informed Mr. Campbell that she only wanted a working relationship with him.

16. Mr. Campbell began to retaliate against the Plaintiff once she ended the texting relationship, including but not limited to, the following ways:

    i.  Mr. Campbell failed to inform the Plaintiff of staff meetings that were directly related to her position as Preceptor which necessitated collaboration with the direct supervisor.

    ii.  Mr. Campbell gave assignments to other nursing staff in the Radiology Department, leaving the Plaintiff out of assignments directly related to her position.

    iii.  Mr. Campbell would not assist the Plaintiff with policies and procedures that directly affected her position as Preceptor.

    iv.  Mr. Campbell would disrespect the Plaintiff in front of other nursing staff in the Radiology Department including taking the Plaintiff into an office or the MRI room and yelling at her while nursing staff overheard.

    v.  Mr. Campbell held Plaintiff to a different standard of work performance than other similarly situated employees.

    vi.  On or about October 10, 2024, Mr. Campbell directed Plaintiff to sign a disciplinary action related to tardiness and absences. Plaintiff refused to sign the action.  She knew that the accusation was untrue and confirmed it with her

time sheets.

17. Plaintiff did not report the relationship or the retaliation to anyone at the time at Carilion Clinic as she felt, due to her position, she had little chance of anything being done to assist her in the situation.

18. On or about November 15, 2024, Leah Britton, a director and direct supervisor of Plaintiff, having direct supervisory power and control over Plaintiff, asked Plaintiff to come to her office. Ms. Britton asked Plaintiff about a particular text message with Mr. Campbell.

19. Plaintiff was honest and admitted to the texting relationship and that she had ended it before it had gone too far.

20. Plaintiff reported the gender-based harassment she had received from her supervisor.

21. In November of 2024, because of the texting relationship with Plaintiff, Mr. Campbell was suspended for a period of time.  Mr. Campbell did not return to his position in the Radiology Department.

22. Plaintiff received a call on November 18, 2024, informing her that she was not to come into work that day.  She was later contacted that same day and informed she could return the following day.

23. On or about November 22, 2024, Plaintiff was called into the Senior Director Lisa Smith's office.  Director Smith had direct supervisory power and control over Plaintiff. Ms. Britton was also present during this meeting. Plaintiff was told that she would receive disciplinary action for participating in an inappropriate text exchange with a leader.

24. During the November 22, 2024 meeting, Plaintiff was told that she could choose between a 30-day administrative leave, a demotion with disciplinary action being placed in her personnel file or pursue other opportunities within Carilion Clinic or elsewhere.

25. Plaintiff was forced to choose the demotion and accept the disciplinary action being placed in her personnel file because she could not afford to be off 30 days without pay and could not afford to not work until she found another position within Carilion Clinic or elsewhere.

26. During the meeting, Plaintiff signed the Disciplinary Action Form enforcing the demotion and disciplinary action being placed in her personnel file. Plaintiff was demoted from Preceptor to Staff Nurse.

27. Upon leaving the meeting, Ms. Britton informed Plaintiff that she would have to call a meeting of the radiology staff and announce Plaintiff's demotion due to inappropriate texting with a leader. Plaintiff did not believe that a director was allowed to announce a staff member's disciplinary action, but was unable to stop it.

28. Plaintiff's co-workers told Plaintiff that they believed she was the reason that Mr. Campbell was fired. There was never any confirmation that Mr. Campbell was fired and did not resign.

29. Co-workers continued to retaliate against Plaintiff including, but not limited to, the following ways:

vii. Co-workers requested that they not have to work with Plaintiff, causing Plaintiff to lose assignments.

viii. If a charge nurse for the Radiology Department was out, the nursing staff would schedule different nurses to be charge nurse for the day. The staff refused to appoint the Plaintiff as charge nurse.

ix. In February of 2025, Sherry Ball replaced Mr. Campbell as nursing supervisor. Ms. Ball has continued to scrutinize the Plaintiff's charting and decision making, chastising and humiliating her in front of other nursing staff. The Plaintiff has never received negative comments regarding her charting or

decision making during her career.

30. Plaintiff reported various incidents to Ms. Britton to which Ms. Britton has responded twice by asking Plaintiff, "Aren't you tired of it?" and "Haven't you had enough?"

31. Plaintiff suffered severe stress, panic attacks, insomnia, frequent nausea and feelings of hopelessness as a result of these ongoing workplace behaviors. Plaintiff was forced to seek psychiatric treatment and medication from a health care practitioner to deal with the effects of her working conditions.

32. Plaintiff has suffered a loss of income including $5,000 which is part of her signing bonus.

33. Plaintiff felt the environment was intolerable. Upon advice of her medical provider, Plaintiff resigned from employment on October 8, 2025, suffering a constructive discharge.

34. Plaintiff suffered both a demotion and a constructive discharge, two separate adverse employment actions, at Carilion Clinic.

35. Plaintiff's demotion and subsequent constructive discharge were retaliatory actions on the part of Carilion Clinic.

## COUNT I:  CLAIM FOR TITLE VII SEX DISCRIMINATION

36. The Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

37. Plaintiff identifies her gender as female.

38. At all times material hereto, Carilion Clinic had an obligation to maintain a work environment that was not charged with sex discrimination and hostile to Plaintiff.

39. Carilion Clinic violated federal law by creating and permitting a work environment to exist that was discriminatory and hostile to Plaintiff.

40. The above-referenced employees were acting in the course and scope of their employment with Carilion Clinic at the time of their actions; therefore, Carilion Clinic is liable for its actions

under the doctrine of *respondeat superior*. Carilion Clinic's actions against Plaintiff were committed during working hours and at their place of employment and/or were in conjunction with work-related responsibilities.

41. As a direct and proximate result of Carilion Clinic's actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

42. At all times material hereto, Carilion Clinic engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of punitive damages.

43. Prior to Plaintiff' separation of employment with Carilion Clinic, Plaintiff was performing her work at a satisfactory level and meeting or exceeding Carilion Clinic's legitimate business expectations.

44. Any reasons cited by Carilion Clinic for Plaintiff' discipline were pretextual as Plaintiff's work performance was meeting legitimate business expectations.

45. Plaintiff suffered a demotion and a constructive discharge due to the discrimination of Carilion Clinic.

46. The above-described acts by Carilion Clinic constitute sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.

47. Plaintiff is entitled to all reasonable costs, including attorneys' fees, associated with this matter, plus interest, pursuant to 42 U.S.C. § 2000e-5(k).

### COUNT II:  CLAIM FOR TITLE VII RETALIATION

48. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

49. At all times material hereto, Carilion Clinic had an obligation to maintain a work

environment that was not charged with sex discrimination and hostile to Plaintiff.

50. Plaintiff was subjected to harassment by her supervisor on the basis of gender and reported the same.

51. Plaintiff observed that she was subjected to discriminatory treatment and harassment that male employees did not experience.

52. In direct retaliation for her opposition to Title VII violations at the workplace, Plaintiff was demoted and later constructively discharged.

53. The above-referenced employees were acting in the course and scope of their employment with Carilion Clinic at the time of their actions, therefore, Carilion Clinic is liable for their actions under the doctrine of *respondeat superior*. Their actions against Plaintiff were committed during working hours and at their place of employment and/or were in conjunction with work-related responsibilities.

54. As a direct and proximate result of Defendant's actions, Plaintiff suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

55. At all times relevant, Plaintiff performed her work at a satisfactory level, meeting or exceeding Defendant's legitimate business expectations.

56. At all times material hereto, Defendant engaged in a retaliatory practice or practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of punitive damages.

57. The above-described acts by Defendant constitute retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.

58. Plaintiff is entitled to all reasonable costs, including attorneys' fees associated with this

matter, plus interest, pursuant to 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiff Katelyn Holland prays for judgment against Defendant Carilion Clinic, compensation for back pay, front pay, compensatory damages, punitive damages, together with prejudgment and post judgment interest thereon, reasonable attorney fees and costs, and for such other and further relief as may be just and equitable.

**TRIAL BY JURY IS DEMANDED ON ALL ISSUES UPON WHICH A TRIAL MAY BE DEMANDED INCLUDING THE ENFORCEABILITY OF AN ARBITRATION AGREEMENT.**

Respectfully Submitted,

**KATELYN HOLLAND**

By _____
        Of Counsel

Thomas E. Strelka, Esq. (VSB# 75488)
VIRGINIA EMPLOYMENT LAW
4227 Colonial Avenue
Roanoke, VA 24018
Tel: 540-283-0802
thomas@vaemployment.law

*Counsel for Plaintiff*